08-1152 Advanced Software Design Corporation against the Pre-Federal Reserve Banks and Fiserv Incorporated. Mr. Rabenberg. May it please the court, Keith Rabenberg on behalf of the plaintiffs and appellants. This case, as you know, involves section 1498, which is a waiver of the government's sovereign immunity when a government contractor provides services to the government and there's a claim of patent infringement. And I don't mean to be flip when I ask this question, but sort of like why we're necessarily here. I think you indicate, I think you may have indicated that you weren't seeking an injunction. So what this court, the court below leaves you with the remedy and particularly given the government's waiver of sovereign immunity to go into the court of federal claims and try to seek whatever relief you think might be warranted in light of the alleged infringement. So why is that so problematic that we're, you know, litigating this issue here now? Is it a matter of principle or is it a practical issue? Well, there's probably a principle, but the practical matter, Your Honor, would be if we went to the court of federal claims without having taken this appeal and the judge below certified this for an immediate appeal because there remains claims in the district court against the remaining defendant there. But I guess my concern would be that we proceed again to the court of claims, that case goes to a conclusion and is ultimately appealed to this court for some reason and maybe this court at that point in time decides differently from what Judge Perry did in the district court. So I think it makes sense to have the issue resolved now. That's the practical point of it. Oh, you mean so you don't get yourself in a catch-22 and then get told four years down the road that you were in the wrong place after all? Exactly. So that's why we're here. And as I said, there remains part of the case below. There's three patents, there's a multiple number of claims. The particular claim that was asserted... If you're here just to get resolutions, you don't end up four years down the line, then do you really care which court we put you in? I'm from St. Louis. I prefer to be there, Judge. We don't know, I suppose, in the proceedings below, did the United States actually agree that they met all of these definitions which would put them in the position of having authorized and requested and accepted liability for any infringement? The United States took the position in the case that there had been, at some point in the past, an authorization and consent to the potential infringement. It's our position that that never occurred. And as our brief points out, I believe there is a case out there, the Roberts case cited in our briefs, where the government, in a situation, came back later and sent an express authorization and consent letter after the fact saying, to the extent there's any ambiguity in what happened, we're hereby granting that authorization and consent. That never happened here. The government, in my reading of their papers, never said that expressly in any of their papers. What they said is they argued that what had happened had constituted an authorization and consent. And the government, through the witness at the Treasury, said that the only two papers she could identify that could have constituted that were a couple of letters that had been sent from someone at Treasury to someone at a Federal Reserve Bank. And those are in the appendix and they're referenced throughout the briefs. And neither one of them says anything of the sort. Indeed, the government was okayed, was in favor of, was happy to participate with the Federal Reserve Banks in instituting this software. But consenting to doing that is one thing. Consenting to waive the government's sovereign immunity and grant immunity from patent infringement to a private party is a different thing. It's the latter part that never occurred. That's our position. Never occurred until more recently. I don't believe it. My position is it has yet to occur. It never has occurred. So if the government attorney stands up today and says, we authorize it, what happens? Well, if the government attorney stands up today and says we hereby authorize it and go forth and infringe the patent with immunity, I suspect that will have happened at that point in time. But I also would hope that the court would award my fees for the time that's been wasted all along up to this point in time. And a question in my mind... Can you authorize something ex post? I mean, that was something I was thinking about in this case when I was reading government's arguments about the fact that we've intervened basically constitutes what I see to be an ex post authorization. That's their argument anyway. And I was wondering, can the government do that ex post to authorize the earlier behavior? And does that meet with 1498? Can the government authorize later something that it determines happened earlier without it? Suppose there was no question. There was no evidence of earlier government authorization. But after the fact, they go back and authorize it. Would that satisfy 1498? There is one case, and it's been cited in the Brees and Roberts case, where that happened and that was approved. It was after the fact. Keep in mind that... What about the Hughes Aircraft case? Isn't that the one that the district court cited for post hoc intervention and... Right. It's our position that that's addicted in the Hughes case. The Hughes case said, supposed that it could happen at an intervention by the government and a later case could constitute a post hoc authorization. We have not found any case where that has ever happened, where the intervention by itself is that. If there's an intervention and then they deliver the normal, the expected, clear and unambiguous authorization consent letter, that would be something different. But that's never happened here. Now this Roberts case, because I wasn't remembering it and I looked it up in your brief, this is a District of Pennsylvania case from 1959. That's correct, Judge. Certainly not binding on this court. What would you argue to us about whether or not we should accept an ex post authorization? Do you feel that Roberts is rightly decided? It's not binding on us, so... No, I understand, Judge. It's the only case that we ever found that spoke to that issue directly. It's the only one. It's hard for me to say that that's wrong, Judge, because you keep in mind, what's going on here with 1498? The government has the right under that statute to make the decision that's going to waive its sovereign immunity and it's going to confer immunity on a private party. That's because it has to do with United States patents and the government can give any party the right to practice a patent without an infringement claim. Whether that happens before or whether it happens afterward, to be honest, I don't think it probably makes any difference. However, I would say, Judge, it's what I said a moment ago, and I think it responds to your first question, why are we here? There's been an enormous amount of time spent and wasted without that having happened. I would ask... But let's assume, because we're again going to run out of time, let's assume for the remainder of your argument that when it comes time for the government to stand up, they say, no, we're not going to be liable for full and if they go otherwise, I think you're home free to go to the Court of Federal Claims and perhaps hold them to it. But let's assume that we are in the posture, the ambiguous or other posture that we're in. Is there anything else that you want to tell us in terms of your suit against the banks? In terms of the 1498 analysis? Well, there's two parts to it, of course, and it's addressed in our briefs, the for the government concept and the authorization and consent concept, which is mostly what we've been talking about. The for the government part of the analysis, I don't think the case law describes any real clear way of understanding how to test that if it exists or not. The cases that address this issue, there is some kind of government contract, there is some kind of government specification, there's something. And when the government goes out, procures, solicits something from a private party, it's pretty clear it's for the government. That didn't happen here. What happened was the Federal Reserve Banks approached the government and asked them if they wouldn't participate and cooperate in this and they agreed to do that. There is no government contract. There never has been. And also the government, when given an opportunity, and this is reflected in our briefs, positively and unambiguously said this is not a government procurement. We don't want it to look like a government procurement. It's the Federal Reserve Banks who are not the government procuring something for something that they are doing. So it's our position that how do you address the for the government concept when there's no contract? I think you have to look at what was the purpose? Where is the benefit? Who solicited whom? And that's addressed in our briefs. What is the remedy that you are seeking from these defendants? Is it a license? A royalty? Well, the lawsuit has been filed against private parties and our assumption is 1498 doesn't apply. So yes, we are seeking all available remedies under the patent laws. We had told the government, I did, expressly, that their concern about an injunction to stop Treasury's checks was not something they should be worried about. We have no interest in stopping the Treasury checks. It's the validation process that checks for fraud that is what infringes the patents. That's what we didn't, that's all we were seeking. So now, if the government wanted to ask me if my client would agree that it's not trying to stop the validation process either and would satisfy itself with just damages, you know, we might do that. But I think that probably is not really a necessary inquiry because I would assume that at the time, if I prevail ultimately in the case and ask for an injunction against it, I think the government could come in with a pretty good public interest argument as to why I wouldn't be entitled to an injunction. So far, there's been no adjudication on the infringement question. That's correct. That's correct. So I don't know if I answered your question, Judge, but I see I'm at... You're into your rebuttal time. I think perhaps we should hear from the other side. Thank you, Judge. Thank you, Mr. Ravenberg. Mr. Levitt. Good morning. May it please the court, I'm appearing here for the three Federal Reserve Banks as well as for FISERV. If I may, I'd like to respond first to the questions that were posed from the bench to opposing counsel. And I think it's important to understand in connection particularly with the first question posed by Judge Post, the following. And counsel picked up on it at the very end where they said, we're only trying to get an injunction on the validation side against the banks. We're not seeking to enjoin the treasury. It's important to understand what this technology is. It's customized software that has two aspects to it. One is the treasury uses it to imprint on every check that they issue in a seal, which is actually the signature block on the check with their bunch of dots. When that's decoded, it will show the name of the payee, the date of the check, the amount of the check, all the critical information. And when it's presented to a Federal Reserve Bank for payment, their reader, their computer software, the other side of the coin, unscrambles that and can tell with 99% plus accuracy whether there's been any forgery or alteration. Mr. Rabenberg filed a declaration in the district court, which is at page 442 of the appendix, in which he specifically said that we're not trying to interfere with the printing and caching of U.S. Treasury checks. Instead, as reflected by the complaint, plaintiffs were seeking only to enjoin the use of the validation process by the Federal Reserve Banks. This is somewhat like saying to the Gillette Company, we're only going to enjoin you from making razor blades. You can go ahead and make the razor. The problem is the razor is no good unless you have the razor blades. And here, the fact that the treasury encrypts this information on the checks is totally worthless if the Federal Reserve Banks, their fiscal agents under section 391 of the- You're telling us it would be an inappropriate remedy. But let's return to the question of whether there might be, and as you know, the law of injunctions has had certain clarifications along the way, which might be applicable here. If, in fact, the big argument is whether an injunction may or may not be available, and otherwise there is no dispute, that would change the complexion of this case quite significantly, would it not? With all due respect, Judge Newman, I think the issue is more basic than that. Well, I thought so, too. That'd be helpful if you got to the basics. I think the core issue is Congress, when they enacted section 1498 in 1910 and then amended it in 1918, they specifically waived the government's sovereign immunity in situations where a manufacturer use of a device covered by a patent is for the government and is authorized or consented to by the government. It's somewhat tautological, but that's what the statute says. And there can be no doubt here that all the requirements of the statute have been satisfied. Well, I guess there can be no doubt. Boy, that's kind of tough, because I think you have to admit that you're in the hinderland with regard to the for the government thing between, say, Larson and Riles on the one hand and Severson on the other. I mean, you're not clearly governed by any of these cases as far as the for the government. So the beyond any doubt language seems a little bit overzealous to me, Counselor. I'm willing to try to support that, Judge Moore. I think Riles is an easy case that dealt with royalties on the continental shelf and all that was occurring to the government with a percentage royalty coming from the drilling. This is very much different than Riles. It's also very much different than Larson. Larson was a case where thermoplastic splints were being used by health care providers who were seeking government reimbursement under Medicare and similar government-sponsored plans. The courts rightly held in those cases that the government's interest was remote and indirect. Are you saying that you're in the category of a contractor, subcontractor? The government here in the form of the United States Treasury went out through its fiscal agent, the Federal Reserve Bank of Philadelphia, who contracted with Pfizer to customize soft ware that can only be used by the United States Treasury and the Federal Reserve Bank. They need to contract with the government. You're saying that the banks were acting for the government as the government rather than as whatever, I call it quasi-independent status the banks are. I don't think that may be an issue. I'm not sure I'm hearing your... I'm looking at the statute. It says, covered by a patent of the United States, says the use and manufacture of an invention by a contractor, a subcontractor. That means a contractor between the user and the government. And here you have Pfizer, who is contracting with the Federal Reserve Bank of Philadelphia. So the bank you're saying is the government. It's an instrumentality of the government. It's not the government, but it's acting as a fiscal agent pursuant to Section 391 of the Federal Reserve Act on behalf of the government. We can only act as a fiscal agent for purposes of the deposits, right? I mean, it's not for the... I don't remember all this quite exactly, but I remember it's not the banks aren't... A fiscal agent of the government for all purposes. Well, not for all purposes, but it's not only with respect to deposit, but it's also with respect to the payment process as well. That's the last part of 312. And here it is clear, to get back to your question... Yeah, but that's what I was hoping you'd do, because the government, though, is not going to be the one paying if the banks cash a fraudulent check. It's going to be the banks because they cashed a fraudulent check. But I think that's... Isn't that true? In a legal sense? As opposed to? When you go and present your check to the Riggs Bank or something, and it turns out it's a Federal Reserve Bank, I believe under the applicable law, the risk lies with the bank to whom the check was initially presented. But that's not... I think that's missing the point. That's what counsel argues in his brief. But I think the point is, the government has a legitimate and significant interest in maintaining the authenticity of its own checks and ensuring that they're not forged and altered and making sure... You know, if there was some danger here to the government, like, for example, the forgery was so extensive that the banks were beginning to say, we're not going to cash government checks because we just can't... We don't have an accurate means of ensuring the accuracy of them. If there was some evidence in the record anywhere of what you're saying, then it would distinguish it from, say, the general notion that the government has an interest in ensuring a healthy citizenship and thereby is interested in the welfare of the Medicare program, where the government has an interest... I mean, the government has a lot of public interests. Clearly, but yet that alone, standing by itself, doesn't justify that every single one of these cases satisfies the For the Government prong. If you look at the data that's in the appendix that counsel obtained pursuant to a FOIA request from the government that shows the forgeries and alterations that have been caught as a result of using this software, there are substantial numbers there. I mean, we're not talking about insignificant numbers. And there's also testimony from Ms. Tillman, who at the time was the deputy commissioner of FMS and is now the commissioner, about the importance of this to Treasury in making sure that the proper payees of government checks are assured of getting payment, that their checks are not forged, altered, whatever. And this software has a 99% accuracy rate. That's undisputed in the record. I don't doubt any of that, but I still don't see how this is for the government. It seems to me it's at least primarily beneficial to the banks. So what I think you have to show me is why the benefit to the government is sufficient enough to make this for the government. Because as in Riles and as in Larson, there was a benefit to the government, right? The government got royalties in one of the cases. And in the other case, the government had an interest in its citizenship, having access to the best possible health care. And they were ultimately the one paying the bills via Medicare. But it was purely incidental that they were paying it. I mean, because somebody could come in and use an insurance plan as opposed to Medicare. Tell me why it's more... I agree with you. I agree with you. There's more here than there was in either of those cases. But it's not as much as Sevenson. Because in Sevenson, the waste was being processed for the government. It was government land that the hazardous waste was sitting on. It was Corps of Engineers land, I agree. Yeah. You're definitely in that hinder land. And I need you to get me over from one side to the other. You're citing to Sevenson, which is the most recent case from this court that deals with this issue. And I think the importance of Sevenson for purposes of our discussion here on this point is that they said there merely has to be a benefit to the government. Council has been arguing this brief that it has to be the... Government has to be the primary beneficiary. That's not what this court said in Sevenson. It simply has to be a benefit. And I think it's hard for me to understand how you can say that the government, and that is the Department of the Treasury, doesn't have a strong interest in the public being ensured that their checks are authentic and they maintain the integrity of the government payment process. It seems to me that's an important objective. Well, let's hear from the government. We've used up Ms. Mitchell's time, but we'll extend it. I think that we'll let the government speak first. Thank you. Okay. Thank you, Mr. Levy. Ms. Mitchell, do you authorize it? If it wasn't heretofore authorized, do you do it right now? Yes, Your Honor. Okay. If you do not find so. I understand. Yes. Just to make clear, the government is waiving any objection to the reasonable and entire compensation if it is found that these patents are infringed? We will accept liability under 1498, Your Honor. We have consistently in the lower court and at this level said that authorization and consent had been provided by the Treasury Department through FMS for the banks to use the software. There's a very close relationship between the financial management service and the banks. The banks basically hold our money and make disbursements for us. They're basically our bankers. That is the fiscal agency relationship. FMS is always looking for ways to preserve and protect the integrity of our checks. It had directed the banks specifically to use this particular software, which is customized for reading the encrypted data that is put on the checks by the Treasury Department when we print our checks. There's a very direct benefit to the government in being able to quickly detect whether there's an altered- I understand there's a benefit, but to clarify, because we, again, as we suggested now for this plaintiff to turn up in the Court of Federal Claims and have the government say, you know, us, we didn't sign any contract. We didn't issue any order. We didn't conduct any procurement. How can we possibly be liable for, again, according to 1498, reasonable and entire compensation? Because we don't know what that might be. But that's as much a part of the statute as everything else. Oh, certainly, Your Honor. And the government would not challenge. I mean, certainly if this Court affirms, which we have argued that you should do, affirm the lower court decision that proper jurisdiction is in the Court of Federal Claims under Section 1498. I mean, we would not challenge that. If that's- I understand that's what the court is asking. Would the government challenge that if we get sued in the Court of Federal Claims? Certainly not. I mean, our position has been consistent that there is a benefit for the government by use of this software, and we have provided authorization and consent for such use, and we have accepted any liability. Should there be any liability for patent infringement, we have said we do accept that liability and can be- What's the earliest point that you would say that you authorized it? The two, there's basically when we originally asked the banks to pilot test the software, and that is in June 8th of 2001, we sent a letter from the Commissioner of FMS to the bank saying, in a very detailed letter, exactly what we wanted in this pilot test to determine whether the software was useful and would really do what we needed it to do, and directed the banks to use it. Now, in looking at this letter and the second letter for the rollout for the permanent use of the software in the check fraud detection process, that second letter was issued on- or signed on August 18th of 2003. Now, both those letters have to be read in the context of the very close working relationship between the Financial Management Service and the banks in trying to get this type of software and check integrity software developed and implemented between, certainly, the encrypted data that's put on the checks by Treasury, by software that we utilize from Pfizer, and then on the other end, once those checks are presented to the bank to be able- have the banks be able to read that encrypted data and very quickly determine whether or not there's an alteration or a counterfeit check. So can I- if you don't mind, since you have, like, a minute left, can I move you? Sure, sure. So the government agrees and believes that this case is more like Sevenson and less like, say, Riles and Larson in terms of, here, this case, this action was undertaken for the government. And, I mean, I imagine you would acknowledge that you're not the primary beneficiary of the use of this software, that the banks themselves are, because they avoid having to pay fraudulent checks out. And- but, nonetheless, you think the government's interest is sufficient enough that this qualifies under the for-the-government prong? Oh, I think it definitely does. And if you look at the case, I mean, if you look at Riles, I mean, basically, that was an oil rig that was accused of impringement. I mean, we didn't care how you drilled. We were just receiving a royalty and we- Do you care how the checks are insured not to be fraudulent? Yes, we have to. I mean, we're the ones- there are checks. We're the ones that are printing the encrypted data on the- You care that they're not fraudulent, but you don't necessarily care how the banks make sure they're not. Oh, yes, we do. And I think in the testimony that is in the record, we definitely did. I mean, we looked at other technology. Financial management service looked at a bar-cutting technology. It wouldn't work. We had very specific functionalities that we needed, and that is set forth in the first letter where we were implementing the pilot program and where we specifically directed the banks to use Fiserv software. So we definitely are very interested in exactly what software is using and what kind of functionality the Treasury is going to get out of that, because we certainly are wanting to speed up the time that we are verifying our checks. Well, you've made a strong statement that this case can be brought in the Court of Federal Claims, but I'm still trying to understand how the government accommodates the statutory provision about reasonable and entire compensation. That compensation, if in fact there had been a procurement, perhaps this patentee could have bid for whatever it is, as opposed to finding itself in the position of suing for infringement. But if the injury or the savings or the compensation flows from the member banks, if that's where the savings are, then where does the government fit into this? Well, I don't think that's the only saving. Certainly, we have been able to re-task people at Treasury to other tasks, instead of, we used to use Treasury personnel to actually verify the checks. Certainly, the money that is unlawfully taken out of, you know, through fraud, taken out of the Treasury's accounts gets put back in much faster now, and there's certainly a very much a time value. So you're telling me that your interest comes in the money you save by not having to use the employees to perform this service any longer? Well, and I want to take a step back. You've got to compare that to the amount of money you're going to have to pay them in terms of reasonable compensation for infringing their software, right? I mean, if the amount of the infringement costs exceed the savings for the individual employees, it's not really a benefit for the government. Well, I think you have to look at, in the case law, the benefit for the government does not necessarily have to be monetary. I mean, if you look at the Hughes case... Oh, but you were just arguing it was. You said we were able to retask people to other jobs, and that's the benefit we realize. That is some of the benefit we realize. We do have some financial benefit that we do realize from it. Certainly, our main benefit that we realize from it is that we are protecting the integrity of the United States checks. And if you look at the benefits, you know, that are determined in the case law, it's never been a requirement that the benefit to the government necessarily be monetary. And certainly, there's never been a comparison between the benefit to the government and what other benefits are accrued to other people. And if you look at the Seventh and Case... But precisely, that's why I'm trying to really focus on the statutory requirement for entire compensation. That's from the viewpoint of the patentee. And if the government isn't in a position to pay, let's just leap ahead and say that the patents are litigated and all the defenses are raised, and they are survived and found valid and infringed. Sure. And there is a use, and there is a saving, and there is, in accordance with the ordinary rules, absent complications, that compensation, whether it would be a reasonable royalty or who knows what, would be paid. And I just heard you say, well, that's not us. But we don't pay such compensation because we're not the ones experiencing the savings. In that case, this patentee has not, would not, have lost the right of action as against those who are in the position to fulfill the entitlements to patentees. If, in fact, as both of you have told us, you can't sue the banks, you only have to sue the United States. But in looking at the statute, there's more than one aspect in that statute. One is that there be a contractual arrangement or something close to it. And you have assured us that the government is not going to dispute that. However, there's the other obligation. And I'm trying to understand, as here an easy solution sounded like saying, well, that ends the case here. Don't worry, the government's willing to be sued. Or perhaps there's nothing to be sued about with your acquiescence. How can you accommodate the other side? Maybe they do indeed have a case against the banks. As I understand your question, your concern is that if the banks are saving money hand over fist and that we say, no, we're the ones that are accepting liability, somehow that gets parsed out. And the plaintiffs can never attempt to argue that in the court of federal claims. I think it's your concern. What we say under 1498 is that we're accepting liability, which means they can bring it. I mean, we're saying those acts are as if they are our acts. And we, you know, you can raise all of that in the court of federal claims in terms of however, you know, whatever arguments. You're saying whatever reasonable royalty would be assessed against the banks, you will assume and pay. Well, we're saying that we are liable for those particular acts. Now, however, that damages would have been assessed against the banks, you will pay. That would be that certainly we're accepting liability for those actions. Yes. And back just very quickly to your point, Judge Newman, about 1498, it specifically says a contractor, subcontractor, or person, firm, or corporation for the government. And that would be the category, which is no longer in dispute, based on what you've told us, that you're not going to challenge whether there's a contractual arrangement or something else, which would bring the United States. That would certainly simplify the further proceedings. And that's why I was focusing on the other part of the statute. Yes, Your Honor. Did that answer your question or do you think? I think so. Okay. Well, if there are no further questions. Thank you. Okay. Thank you. Thank you both. All right, Mr. Ravenberg, you have some redundant time. Thank you, Judge. You asked the government attorney directly, are you authorizing and consenting? And I think she said, yes, if. I think it was conditioned. No, she said, yes, if you don't construe what we said earlier as authorizing, then yeah, I'm certainly at a minimum doing it now. Okay. I just need, and I think it's picking up on something that you're line of questioning, Judge Newman, is this a government procurement or not? What are my client's remedies in this sort of situation? You know, the Federal Acquisition Regulation, which applies to government procurements, was not used here. Was not used here because it was a private party. It was Federal Reserve Banks who went out and contracted for this. And my client, as the papers say, provides an alternative solution for the very same thing. My client was not given an opportunity to bid on that because this was an inside deal. That's why we sued. And I said somewhat flippantly in response to your question about why St. Louis instead of here. But the other aspect of that, Judge, is that if 1498 applies, the remedies are limited beyond lack of an injunction. It's a reasonable royalty plus costs and expenses. And you don't get a jury either. Yes. And if it's a suit between two private parties, which is what our position it is, we can pursue what other kinds of damage or remedies that we can think make sense. And there's been a lot of talk about how valuable this stuff is. I think it has been literally dozens, if not now hundreds of millions of dollars, saved by using this software. And that money is clearly saved by private banks who aren't even parties to this lawsuit. The banks that own the Federal Reserve Banks. And so a patentee who has a patent that's being infringed and the party to a great benefit of the infringer, normally should have the right to go pursue that infringer. And when that other party is a private party, as it is here, they ought to be able to do that. And if what I hear now that this is in effect a post hoc authorization and consent, and it's become tantamount to a government procurement contract that wasn't done properly, and my clients set out from this, that's why you should not affirm this decision. What they're saying is that because we're fiscal agents of the United States, we can do and act in their shoes, but we don't have to actually act like them. And that should not be condoned. Private parties need to be able to pursue their remedies against other private parties. And 1498 was never meant to be a grant of sovereign immunity to a private party by another private party. And that's what happened here. If that's what's going to be the result. So, you know, I made a flip response earlier in your question, why not the Court of Claims? I'm from St. Louis. That's true. I am from St. Louis. And that's where we filed the lawsuit. But the remedies are appropriate there for what happened. I don't know, the remedies are limited in the Court of Claims. And there's no jury, as you say, Judge. So I think from a policy perspective, the case should be reversed because think of it this way. If the government wanted to do what they're saying now in retrospect, post hoc, that they wanted to do, it was very simple. They could follow the Federal Acquisition Regulation. They could have gone out and procured this and told the Federal Reserve Banks to put it in place. And we wouldn't, you know, we wouldn't be here today. This issue would have never occurred. Let's just say that that was an innocent mistake. If, in fact, it was a mistake. That's behind us. Now we have this situation. Yes. But the point is, if it's an innocent mistake or whether it was on purpose, the fact is, is that it didn't follow the rules that you're supposed to follow when you go out and make a government procurement. It's true your client might have prevailed and become the provider. But that didn't happen either. That didn't happen either. And I, you know, there's not a remedy in this court or in the district court for that. Now maybe there's something, maybe there's a complaint that can be made with some agency about that. But to this day, this has not been a government procurement. And I don't know who would say they had the jurisdiction to look at that kind of a mistake. So I guess what I'm saying, bottom line, is I think from a policy perspective, the right thing to do is to reverse this and send it back to the district court for the case to proceed. A case between a private party who has a patent and a group of other private parties in the United States who are alleged to be infringing that. And the case can be resolved as any other patent case between private parties and make it clear that if you're going to do a government procurement, you're supposed to do it the way you're supposed to do it. On the other hand, if it's, if you affirm and send me to the court of claims, as I said earlier, I believe there's been a lot of time and money spent and wasted on this endeavor for the government to now come out and announce finally that they're granting post hoc authorization and consent. And, you know, I would be asking for relief in that regard. I think we've covered all the issues. If there's any other questions, I'd be happy to address them. Okay. Any more questions? Thank you for your attention. Thank you, Mr. Regenberg, Mr. Levitt, Ms. Mitchell. Case is taken under submission. Thank you.